Good morning, Your Honors. If I might reserve two minutes for rebuttal. You may, but you'll have to keep track of your own time because the clock shows the total amount. Natasha Ray for Francisco Sanchez. This particular appeal is really only focused at the procedural rulings of the district court judge as well as the evidentiary rulings. There are two basic issues in this appeal. Number one, whether or not the district court judge was appropriate and proper in precluding Mr. Sanchez from hiring a replacement expert witness when, in fact, there was still nine months before the actual trial would be heard after I actually became involved in the case. Our basic premise is that there was plenty of time for the parties to have heard from a new expert, depose him, and be prepared for his testimony at the trial setting. The district court judge, before I actually became involved, basically indicated that no new discovery or disclosure would be permitted in the case, but he would allow the parties to withdraw from the joint pretrial order that I had taken issue with upon reviewing the case in order to take it over at such a late date. In that ruling, he basically prevented Mr. Sanchez from presenting an expert to officers. The defendants, Woolridge and Doyle, used excessive force. I substituted in on December 7th. And was discovery still open? I would say no. There was never a formal ruling closing it. You substituted in December 7th. How long was it before you asked to get a new expert? It was actually before I substituted in. Mr. Sanchez, I made a motion to withdraw from the joint pretrial order and to hire new counsel. And in that preparation, I attached an affidavit. I had made contact with the expert that I had used before and was able to obtain his trial availability. And he was available in February or March. I was getting ready to have a baby, and therefore I was going to be on maternity leave at least through the first of the year. And that's why I could not do the trial at the time that it was originally scheduled. But we did ask in that affidavit to reopen discovery at that time or at least permit us to use Dr. Gould out of Flagstaff as our expert witness. I had used him before. I knew that the defendants were aware of him because the opponents that I've had before were the exact defendants that we were dealing with, which was the Pima County Sheriff's Department. So they had deposed Dr. Gould before in previous matters. They were aware of his credentials. They had even cross-examined him at trial before, one which I had represented on. So under the circumstances, it would not have been a huge request to reopen at least that portion of the discovery in light of the fact that the deadlines had clearly passed. So that wasn't the issue. The necessary issue was, was was Mr. Sanchez going to be able to present an expert in his case-in-chief? And when the judge ruled that there would be no reopening of discovery or disclosure at that point, we knew that there was no necessity in requesting it again. Well, can I understand something? This is an excessive force case, is that right? Yes, ma'am. So the expert is going to provide what? What is the role of the expert here? The expert provides his police practices experience in determining whether or not the officers acted reasonably under the circumstances. And it is our position that they did not, that they used excessive force. If, in fact, there was a proper arrest, which sort of segues into our second issue, since there was an acquittal of the criminal charges against Mr. Sanchez, but whether or not the officers used excessive force in effecting that arrest. And since his ankle was broken in three places and he was permanently disabled from that night forward, we knew that there had been excessive force at that time, plus he had been tased. It's hard to say exactly how many times, but we believe at least three times. Okay. So what would your witness have testified to or what would you have had a witness testify to that you could not develop in cross-examination of the other side's expert? It's a good question, Judge, and I think that at times we can't. Well, does this record show that? I don't believe so, because it was never really discussed with Judge Collins what Dr. Gould would have provided over and above, what Lieutenant Kester would have provided on cross-examination. The concern is the visual appearances of the trial. And what happened after the trial, I actually spoke with one juror, and she asked me, she said, why did you not present any witnesses on your side? And to me, that hearkens to the actual expert. And that's why I had asked to use Lieutenant Kester, the defendant's expert, and call him in my case-in-chief. Well, don't you have to make a record of what this expert would have testified to, to convince us that the Court abused its discretion in excluding the expert? I believe the record was already submitted in the affidavit in the request for the the expert. Well, there is a record that you requested an expert, but don't you have to submit evidence of what the expert would have testified to? It was a very generic proposition at that point, that he would be a police practices expert and then testify to the fact that the officers had acted excessively and unreasonably. Well, but there would have to be someone that would be willing to say that. There are, you know, if you assume that experts have, you know, that they're just not something that you can always buy and get someone to say everything, you would have to assume that there would be someone out there that would say that. Certainly. And Dr. Gould, I had already presented the facts to him, had discussed things with him. He was very aware of the facts. We had worked closely on another case together. So did you present that as part of your motion? Did I? Yes. It would have been in the affidavit, Judge, and I don't believe I went into that detail. We just simply requested that we be provided the opportunity to hire an expert, and Dr. Gould was available. And you didn't tell the court who the expert was or what the – I did, in the affidavit, Judge. It was presented in paper format. I never had an opportunity to address the judge in person because he had already made the ruling, and based on my training, I did not need to renew the request after he had already definitively decided. Okay. But as we grew closer to trial, that's when I became somewhat desperate and unorthodoxly asked for the opportunity to call Lieutenant Kester in our case. Well, now, you're a trial lawyer. And think about, all right, they got their expert on time, all right? They paid that person. And what you want to do is you want to call that expert as yours and present that  And you have a right to support your case, and then they call it later. Now, what trial attorney would ever sit still for that? You wouldn't sit still for it if someone wanted to do it with your expert. I certainly don't fault Ms. Davis for objecting strenuously to my request. However, I don't know that there's anything in the rules that prevents me from doing it. Well, there is. Do you have a case that says you can? I mean, it's in the sound discretion of the court, right? I would say no under those circumstances. Do you have a right to someone else's expert and to call them in your case in chief and present them in the weakest light? When you had an opportunity to have an expert, that expert died, you got an extension. Now, I know you weren't personally in the case, but that's all part of the case. So you get to steal the other person's thunder that did it right in the first place? Well, quite honestly, Tell me, if you were the judge, I just don't think that the judge in my opinion, the judge does not have the ability or the authority to say, no, you cannot call that witness. It would be unorthodox. Well, the judge can't tell you that you can't cross-examine that witness. But what authority do you have to say that you can, that you have the right to call the other side's expert and put their expert in a weak light before they can put it in and do direct examination? Judge, quite honestly, I think it's the lack of authority saying I can't. Okay. You have about a minute and a half left. With just one comment, though, that officer, Lieutenant Kester, their expert, he was coming in on his time with the Pima County Sheriff's Office. He was not being paid as an expert just for his hourly wage as an officer with the Pima County Sheriff's. Thank you. Thank you. Good morning, Your Honors. Nancy Davis on behalf of Appellee's Defendants Carl Woolridge and Donald Doyle. There was absolutely nothing unfair about the fact that Mr. Sanchez went to trial without an expert witness. The simple fact of the matter is he had adequate time to get a replacement expert witness and for whatever reason did not do so. Well, when you say had adequate time, you know, after, I believe it's – do we say it? Not where. Ms. Ray. Ray. That after Ms. Ray came on the case, it didn't go to trial for quite a while, right? That's correct, Your Honor. But the reason it didn't go to trial had nothing to do with the facts of the case or the actual legal posture. And more importantly, I don't see anywhere in the record where Ms. Ray, the plaintiff or his prior counsel ever actually made a motion to the Court to reopen disclosure and discovery. There certainly was a reference of a desire to do so as part of Ms. Ray's willingness to take over representation in the case, but there was no motion. And I think if you look at the docket, the only motion that was made, which the trial court ruled on, was the motion to withdraw from the original jury trial. But the judge said he wasn't going to permit it, didn't he? He did, Your Honor. And if you look at the transcript of that hearing, which I believe occurred in November of 2007, it's very apparent that that statement that the plaintiff is appealing was in response to concern by defense counsel about whether, because there had been this expressed desire to perhaps do that as part of withdrawing from the joint pretrial order, whether that was a ruling or something that was going to be inherent in the decision that the trial court made. And so the trial court judge just made an affirmative statement that there was going to be no reopening of discovery and disclosure. And I think that's significant, because certainly at the time of that hearing, Ms. Ray was not counsel of record, and so she did not make the motion. And when you review the transcript of that hearing, there was no motion made by the plaintiff who was present and actually spoke at that hearing, nor was there any motion made by his prior counsel, who in fact affirmed to the trial court that at that point everything was ready to go to trial and there was going to be this issue about whether or not Mr. Sanchez was going to change counsel. I would also point out that he made a notice of intent to change counsel in early July of 2007, shortly after the settlement proceedings concluded, but then never – there was never any substitution done until December of 2007. And so there was this long period of time where certainly someone could have made a motion to do that. More significantly, at no time after Ms. Ray became counsel of record until the actual trial date is there anywhere in the record a motion or a request to reopen discovery and disclosure. Most significantly, also, there was never any offer of proof made. There was certainly a reference of who the expert would be, but there's nothing in the record to indicate that counsel for the appellees and defendants had ever dealt with this particular expert before, had ever deposed this expert, or really had any knowledge about this, the expert name that was provided. Additionally, there's absolutely nothing in the record about what the substance of this supposed testimony would have been. Was there a motion for new trial or anything like that, that might? No. No, Your Honor, there was not. Okay. I believe the record indicates that after the amended judgment. Now, there isn't – counsel, Ms. Ray raises a point that there really isn't any case law out there that just exactly answers the question that we have here in terms of there aren't any cases that say you can or you cannot call someone else's expert. So it goes within the sound discretion of the Court, or if we published on this, then there might be something after this. Why would you have been prejudiced? You know, the imprejudice, which I believe Your Honor had indicated when questioning Ms. Ray, this was our expert. We had called – we were going to call him at trial, and there is perhaps, maybe it's just in the minds of the attorneys, some perception of an advantage by having your expert called by the other side. Well, is there a possibility, if you don't have an expert, that at the end of the plaintiff's case that you could make a motion that they hadn't established a prima facie case if they didn't have an expert? Did you do that? Did I make the motion? Was there such a motion made at the conclusion of the plaintiff's case? No, Your Honor, there was not. I'm sorry. Was there a motion for directed verdict? Yes. Yes, there actually was. And that was denied. It was not on the grounds of no expert. No, that's correct. Well, I mean, you know, I guess what I'm saying is if an expert would be necessary for a plaintiff to proceed after they had rested, is there a possibility that, you know, that you don't have an expert, that that would be an arrow in your quiver at the end of arresting their case, that you would be able to say they haven't presented sufficient evidence at that point and get a directed verdict? I don't think so on the facts of this case, just because there was such a wide factual dispute between the plaintiff's testimony as to what occurred. And he did have a broken ankle and all of that, so that it would still be – there would probably still be some sort of triable issue on whether that was excessive force or not. That's correct, Your Honor. The other thing that's important, on this particular record, the officers asserted qualified immunity. However, because of the factual dispute between the officers' versions of events that – what occurred that evening, as well as the plaintiff's version of events, Mr. Sanchez's version, we actually, as part of the information submitted to the jury, had to do special written interrogatories to resolve the factual dispute on qualified immunity. The Court ultimately never had to rule on that because the jury found unanimously in favor of both defendants on the issue of excessive force. Now, Ms. Wray fully cross-examined your expert witness. That's correct, Your Honor. So how could the Court's decision not to allow Ms. Wray to call that expert in her case possibly be reversible error? We don't think it is. That's exactly the point that we raised in our brief. Not only did she have an opportunity to fully cross-examine him, I also want to add that at no time in either of the joint pretrial orders or any of the disclosure statements had the plaintiff in any of his counsel ever made any indication that they wanted to call Lieutenant Kester as one of their witnesses. And I think that's significant because they did list the actual defendants as two of their witnesses and started the trial by calling Lieutenant Woolridge, who was a sergeant at the time when the incident occurred, but they actually called the defendant, Lieutenant Woolridge, as the first witness to their case. And so there just was absolutely no abuse of discretion in the trial court on that  I just want to ask you about the second issue. The excessive force was the claim was excessive force in the course of an arrest? Correct, Your Honor. Right. And he had been charged with assaulting a police officer. Is that? That's correct. And was that in the same incident? Yes. He was charged with aggravated assault out of an incident arising at the same time that the arrest. Okay. Now, the only issue that went for trial was the excessive force. No, but a bench trial, he was acquitted previously. Otherwise, he wouldn't have been able to bring this charge. Correct, Your Honor. And he wanted to introduce that acquittal as evidence of something in the trial that you were involved in. That's correct. And I think the position is they're relying on some dicta out of an appellate state court decision in Arizona, which suggested that if a record showed that an acquittal in a criminal case was for the reason that there was no basis in fact for the underlying charges, that it might be relevant in an excessive force case such as this. Significantly, in this case, that actual not guilty verdict is not part of the record on appeal. It was not attached to her objection to our motion in Limoney, and so there was no evidence before the trial court as to why Mr. Sanchez was found not guilty in that criminal case. Is that assumption correct, that if he had been convicted that he wouldn't be able to bring an excessive force case? I don't think so. Actually, let me correct that, Your Honor. That was not correct. You're right on that point. If he had been. And if he had been convicted, would you have been able to put in the record of the conviction? If he had been convicted of the aggravated assault?  I don't think on the issue of excessive force. The actual reasoning for the not guilty verdict is just not part of the record on appeal. There's no indication that he was found not guilty because whether the prosecutor failed to meet its burden of proof or for whatever reason. But why did the district court say it was irrelevant? On its face, it doesn't seem totally irrelevant. It does seem irrelevant because it's just a not guilty verdict. And unless you know why the not guilty verdict occurred or had some factual findings to support it. Well, you don't know that with a jury, do you? This was a bench trial, Your Honor. Oh, I'm sorry. Okay. This was a bench trial. And there's actually a verdict for it's not part of the record that says why the court ruled as it did. Oh, and that was not offered. That was not offered. Okay. It's not part of the record. Notwithstanding that fact, the excessive force standard is an objective standard. You look at the conduct of a reasonable officer. And so while the Arizona State court decision suggested that a claim of excessive force and a not guilty acquittal could be relevant on that issue, I just don't think it really is. I think that's actually an improper analysis. Your time has expired. Thank you, Your Honor. We'll rest. It seems presumptuous to me to say that because it was not part of the record is why the court ruled as it did. I don't think there's anything to suggest that one way or another. Judge Collins certainly did not make a record as to why he found it irrelevant. It was just irrelevant in his mind. Based on the plethora of case law out there that says such typical determinations are considered irrelevant because normally the case law is based on a dismissal as a result of a technicality or some other issue, not after a matter has gone through the merits and actually been rendered at that stage in an acquittal. So that was the difference here. And the dicta in our Arizona case law does suggest that under those circumstances it would be relevant or could be relevant, depending on the circumstances. And because the aggravated assault disorderly conduct charges that Mr. Sanchez was acquitted of were directly stemming from where he was bringing the claims with respect to the excessive force, then absolutely it was relevant to show the jury and give them information as to whether or not the officers acted reasonably or excessively under the circumstances. Ms. Miller, make a difference if it was a jury trial or a bench trial? Because the bench trial is one person. A jury is 12. Absolutely. Under the circumstances it was charged as a misdemeanor. It was not a jury-eligible offense at that time. So as a result he did not get a jury trial. He was just afforded the bench trial. But even still, one scholar is better than no scholars. And under the circumstances it would have been helpful. Well, you would think. You would think. We think when people agree with us, but... Okay. Your time has expired. Thank you. The case just argued is submitted for decision.
judges: Lynn, Schroeder, Callahan